# 99 DTA 153

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL I DE SAN JUAN
### PANEL IV

DELSIDA CASTRO MACHIN, FRANCISCO LEON GARCIA, AMBOS POR SI Y EN REPRESENTACION DE LA SOCIEDAD DE GANANCIALES POR ESTOS CONSTITUIDA
Apelados

v.

VICTOR LUIS MENA, HOLSUM BAKERS DE PR, INC., Y GENERAL ACCIDENT INSURANCE COMPANY
Apelantes

Núm. KLAN-98-01135

San Juan, Puerto Rico, a 11 de mayo de 1999

Panel integrado por su Presidente, Juez Rossy García
y los Jueces González Rivera y Ortiz Carrión

González Rivera, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La señora Delsida Castro Machín, su esposo Francisco León García y la Sociedad Legal de Gananciales compuesta por ambos recurren mediante el presente recurso de apelación de una sentencia dictada el 26 de agosto de 1998 por el Tribunal de Primera Instancia, Sala Superior de San Juan, Hon. Milagros Rivera Guadarrama, J., en acción de daños y perjuicios instada por ellos.

La demanda en este caso fue presentada el 27 de mayo de 1994. En la misma se consignaron los hechos que dieron margen a la causa de acción invocada. De la cual se desprende que el 27 de mayo de 1993 ocurrió un accidente de tránsito en el cual el vehículo conducido por el demandado-apelado, Víctor Luis Mena, impactó el auto Honda modelo de 1990, el cual al momento de los hechos era conducido por la señora Castro Machín. En el momento del accidente el señor Mena se encontraba ejerciendo funciones para Holsum Bakers de Puerto Rico, Inc. Como resultado del accidente la General Accident Insurance Co. emitió un cheque por $650.00 dólares a nombre de la señora Castro Machín y del Citibank en pago de los daños al auto que manejaba la señora Castro. Dicho cheque fue aceptado; endosado y cambiado por la parte demandante.

Para el reclamo de los daños físicos, sufrimientos y angustias mentales y pérdida de ingreso por causa del accidente los esposos León Castro presentaron la causa de acción que motiva nuestra intervención.

Luego de los trámites procesales necesarios, el 24 de agosto de 1998 el foro de instancia dictó sentencia para declarar no ha lugar la demanda en todas sus partes y condenó a la parte demandante-apelante a pagar a la parte demandada-apelada la cantidad de $1,000.00 dólares en concepto de honorarios de abogados, así como las costas del pleito. En apelación señalan que erró el foro de instancia al concluir que la parte demandante no probó que sus padecimientos se deban o tengan causa próxima al accidente ocurrido y que los daños o padecimientos que padece la señora Castro Machín se deben a causas degenerativas que no tienen ni guardan relación con el accidente ocurrido; al determinar que un documento del seguro social federal ofrecido por la parte demandante era inadmisible en evidencia por no haber sido anunciado en el Informe de Conferencia con Antelación a Juicio; al otorgarle valor probatorio a unas fotografías que fueron admitidas en evidencia por estipulación de las partes y al imponerle honorarios de abogado.

## II

Según se desprende de la exposición narrativa de la prueba según estipulada por las partes, a los fines de perfeccionar el recurso de apelación ante nuestra consideración, de la misma surge que durante el juicio que se celebró los días 31 de marzo, 1 de abril y 11 de mayo de 1998 testificó la señora Delsida Castro Machín (señora Castro). Expresó que era secretaria y vendedora, que no ha podido trabajar desde el accidente. Declaró que el 27 de mayo de 1993 en horas de la tarde manejaba su auto por la Avenida Gándara de Río Piedras cuando fue impactada en su vehículo por otro manejado por el señor Víctor Luis Mena.

Que en el momento del accidente se sintió muy mal, mareada, mas no se bajó de su auto. Posteriormente, llegó a su casa y se acostó. Al día siguiente se sintió con dolor en la pierna izquierda por lo que visitó al doctor Sierra. El médico le envió a hacerse un CT-Scan y le recetó relajantes musculares y anti-inflamatorios. Posteriormente, la señora Castro visitó a la doctora Anelys Torres quien le recetó 41 sesiones de terapia. Consultó además con los

doctores Boria, Stella y finalmente al doctor Hilario Guzmán. La señora Castro testificó que en la actualidad no puede cocinar, ni fregar, ni caminar, ni hacer nada.

La parte demandante intentó presentar en evidencia el documento titulado *"Notice of Decision Fully Favorable"* del Seguro Social Federal, el cual no fue admitido por no haber sido anunciado en el Informe de Conferencia con Antelación al Juicio. A solicitud de la parte demandante dicho documento se marcó como prueba ofrecida y no admitida.

En el contrainterrogatorio a que fue sometida, la señora Castro declaró que con anterioridad al accidente los médicos le habían diagnosticado varices, artritis y desgastes de los discos. Admitió que el dolor que tenía en su pierna era consecuencia de un disco herniado que tenía con anterioridad al accidente; expresó además que padece de vértigos.

El esposo de la señora Castro, el señor Francisco de León declaró que desde el accidente su vida se ha visto afectada y que su esposa no puede efectuar las labores de la casa ni ayudarle en el restaurant del que es dueño. Que antes del accidente su esposa era muy activa, asistiendo a actividades sociales. Ahora ésta se encuentra mejor, pero no igual que antes.

El doctor Hilario Guzmán Lebrón, fisiatra, testificó como perito de la parte demandante; expresó que examinó por primera vez a la señora Castro el 8 de febrero de 1996. En el momento de su examen la paciente se quejaba de dolor de espalda y de los hombros. Le recetó sesiones de terapias.

Entre sus hallazgos encontró a una paciente bien desarrollada, con limitación en el hombro izquierdo al levantar el brazo y espasmos en la región lumbosacral. La paciente no mencionó padecimientos previos.

El doctor Guzmán examinó los récords de otros fisiatras y doctores que habían examinado a la señora Castro. Incluyó una lista de siete diagnósticos que había hecho previamente la doctora Torres.

Explicó el Dr. Guzmán que los médicos de la A.C.A.A. relacionaron los padecimientos de la espalda de la señora Castro con el accidente del 27 de mayo de 1993. La última vez que vio a la paciente fue como un año antes y aún no había mejorado.

El Dr. Guzmán, en su informe del 13 de marzo de 1996, el cual fue admitido en evidencia, concluyó que la señora Castro presenta una incapacidad de un 53%. Que no puede hacer ningún trabajo y que su condición es permanente. El pronóstico es que su condición empeorará por la edad y por otras condiciones.

El perito no relacionó los cambios osteoartríticos con el Síndrome del Tunel Carpal y que los diagnósticos de su lista Núms. 4, 8 y 9 no estaban relacionados al accidente.

En el contrainterrogatorio el Dr. Guzmán admitió que en el CT-Scan tomado al otro día del accidente salía un abultamiento en el L4, L5 y que no necesariamente un accidente pudo haber ocasionado esta condición de un día para otro. Admitió que la señora Castro le refirió el problema de sus venas varicosas, pero él no lo tomó en consideración y no lo incluyó en su informe. Tampoco la paciente le informó que había estado en tratamiento para esa condición con el Dr. Escoto.

El Dr. Guzmán admitió además que las venas varicosas son una enfermedad sistemática, además que la artritis puede causar cambios degenerativos en la espina dorsal. Expresó que el disco herniado puede ocurrir de cualquier fuerza y que en el informe que preparó relaciona cambios con osteoartritis.

A preguntas del representante legal de la parte demandada, el doctor admitió en su informe que la señora Castro tiene deformidad en los dedos de los pies. Además de una deformidad en las manos. Que la artritis es sistemática y se le manifiesta en las manos y en los pies. Declaró además que incluyó en su informe cinco renglones que no están relacionados con el accidente. Estos son los números 4, 5, 7, 8 y 9.

Admitió que la señora Castro Presenta un cuadro artrítico que se presenta desde los pies hasta las manos y que para que vaya de los pies hasta las manos tiene que ir por la espina dorsal. Atestó que la disecación del L2, L3, L4 y L5 es degenerativa, ya que el disco se hernia.

Como testigo de la parte demandada declaró el señor Víctor Mena. Expresó que el día del accidente manejaba un auto Pontiac modelo de 1992 el cual estaba arrendado por Holsum Bakers de Puerto Rico. Manejaba de la Avenida Universidad hacia la Ponce de León cuando ocurrió el accidente. El único daño que sufrió su carro fue un raspaso que fue lavado con *"Lestoil"* y *"Rubbing Compound"*. Se admitió como exhibit 4 dos fotos del auto que manejaba el señor Mena.

El Dr. Israel Ganapolsky, perito en medicina ocupacional, declaró por la parte demandada. Evaluó a la señora Castro el 20 de marzo de 1996. Durante su evaluación efectuó un historial médico y recibió todos los documentos médicos provistos por la parte demandante. El informe del Dr. Ganapolsky fue admitido en evidencia.

Concluyó en su opinión que no existe relación entre el leve accidente ocurrido y la magnitud de la sintomatología que presenta la señora Castro. Los padecimientos de la señora Castro se deben a cambios osteoartríticos, con insuficiencia vascular en un proceso que le causa artritis, variscosidades, calambres en ambas piernas y cambios degenerativos osteoartríticos. La disecación de los espacios intervertrebados que padece la señora Castro se mostraban a sólo mes y medio del accidente y es producto de cambios degenerativos que venía padeciendo antes del accidente. Los episodios de dolor en el hombro izquierdo de la demandante están definitivamente relacionados con peritendinitis calcárea, que es otra manifestación osteoartrítica y definitivamente no relacionada con el accidente.

De los nueve padecimientos enumerados en su informe pericial por el Dr. Hilario Guzmán, cinco de éstos no guardan relación con el accidente y sí con cambios degenerativos.

La parte demandada presentó como testigo al señor Luis Olmo, ajustador de la General Accident Insurance Co., para acreditar al Tribunal el porqué solamente existía una copia de la foto del auto de la demandante y no la foto original. A esos efectos la parte demandante acordó estipular la foto del auto de la demandante y no fue necesario escuchar el testimonio del señor Olmo.

### III

En el caso de autos hubo prueba conflictiva sobre la relación causal de las condiciones que padecía la señora Castro con el accidente ocurrido. El foro de instancia dirimió tal conflicto de la prueba que le fue presentada a favor de la parte demandada-apelada. *Flores v. Domínguez,* ___ D.P.R. ___ (1998) **98 J.T.S. 96,** resuelto el 30 de junio de 1998; *López Vicil v. ITT Intermedia,* 142 D.P.R. ___ (1997) **97 J.T.S. 42,** resuelto el 4 de abril de 1997; *Sanabria v. Sucesión González,* 82 D.P.R. 885 (1961); *Méndez v. Kraidman,* 63 D.P.R. 281 (1944); *Hermida y Palos v. Gestera,* 23 D.P.R. 100 (1915); *Banco de Puerto Rico v. Sucesión Font,* 14 D.P.R. 578 (1908).

Analizado minuciosamente el expediente del caso ante nos, debemos resolver conforme a las determinaciones de hechos del Tribunal de Primera Instancia por estar bien sostenidas por la prueba a la cual dicho foro le dio credibilidad. Sus determinaciones no producen insatisfacción de conciencia ni estremecen nuestro sentido de justicia. En ausencia de una demostración de pasión, prejuicio, parcialidad o error manifiesto no intervendremos con la apreciación de hechos realizada por el foro de instancia. *Aponte Rivera v. Sears Roebuck de Puerto Rico*

*Inc.*, **98 J.T.S. 12,** resuelto el 24 de febrero de 1998; *Orta v. Padilla Ayala,* 137 D.P.R. ___ (1995), **95 J.T.S. 21,** resuelto el 8 de febrero de 1995; *Rodríguez Oyola v. Machado Díaz,* 136 D.P.R. ___ (1994), **94 J.T.S. 82,** resuelto el 3 de junio de 1994; *Cooperativa de Seguros Múltiples de Puerto Rico v. Lugo,* 136 D.P.R. ___ (1994), **94 J.T.S. 77,** resuelto el 25 de mayo de 1994; *Levy v. Aut. Edif. Públicos,* 135 D.P.R. ___ (1994), **94 J.T.S. 32,** resuelto el 15 de marzo de 1994; *Rodríguez Amadeo v. Santiago Torres,* 133 D.P.R. ___ (1993), **93 J.T.S. 106,** resuelto el 29 de junio de 1993; *Gallardo v. Petiton y V.T.N. Inc.,* 132 D.P.R. 39 (1992).

Por los fundamentos antes expuestos se confirma la sentencia emitida por el Tribunal de Primera Instancia, Sala de San Juan, el 24 de agosto de 1998.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General